DSS:EMN/AH
F.#2013R01093

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

DARYLL WARNER,

               Defendant.

- - - - - - - - - - - - - - - - - -X

I N F O R M A T I O N

Cr. No. <u>13-402 (WFK)</u>
(T. 18, U.S.C., §§
1343, 2 and 3551 <u>et seq.</u>;
T. 21, U.S.C., § 853(p);
T. 31, U.S.C., §§
5317(c)(1), 5324(a)(3)
and 5324(d)(2))

THE UNITED STATES ATTORNEY CHARGES:

<u>INTRODUCTION TO COUNT ONE</u>

       At all times relevant to Count One of this Information, unless otherwise indicated:

<u>The Mortgage Fraud Scheme</u>

       1.    From in or about and between November 2005 and January 2006, both dates being approximate and inclusive, the defendant DARYLL WARNER, together with others, participated in a scheme to obtain a mortgage loan on the basis of false information, and to use the proceeds of the loan to finance the purchase of a residential property located at 2101 Brickell Avenue, Unit No. 3504, in Miami, Florida (the "Miami Condominium").

       2.    WARNER, a dual citizen of the United States and Trinidad and Tobago who resided in Trinidad and Tobago, sought to


COURT'S
EXHIBIT NO. 3
IDENTIFICATION/EVIDENCE
DKT.# 13cr402
DATE: 7-15-13

purchase the Miami Condominium on behalf of himself and two family members (the "Two Family Members"), the identities of whom are known to the United States Attorney, who agreed that the purchase would be in WARNER's name. WARNER and the Two Family Members ultimately agreed to purchase the Miami Condominium for a contract sales price of $990,000 financed, in part, by a mortgage.

3.   In furtherance of the scheme, WARNER caused the preparation of a fraudulent mortgage application (the "Mortgage Application"), which was submitted to Lender 1, a mortgage lender with offices in Plantation, Florida, the identity of which is known to the United States Attorney. The Mortgage Application sought to obtain a mortgage loan totaling approximately $690,000 (the "Mortgage Loan"), to be used to purchase the Miami Condominium. The Mortgage Application was materially false, in that it contained false residence, employment, income and asset information as to WARNER. The Mortgage Application also was materially false in that it included a representation that the source of the down payment on the Miami Condominium would be the checking and savings accounts of WARNER.

4.   It was further part of the scheme that WARNER provided Lender 1 with a business telephone number with a New York area code, representing it to be associated with his employer (the "Telephone Number"), and arranged with another

2

individual to answer the Telephone Number and falsely confirm details regarding WARNER's employment.

5.    After reviewing the Mortgage Application containing the false information, Lender 1 approved funding for the Mortgage Loan in the amount of $690,000.  The closing was scheduled for December 28, 2005.

6.    It was further part of the scheme that, on or about December 26, 2005, WARNER sent an email from Trinidad and Tobago to a loan officer employed by Lender 1 in Florida seeking to delay the closing by one day.  WARNER sent the email because he needed additional time to obtain funds representing the contributions toward the closing costs on the Miami Condominium made by the Two Family Members.

7.    It was further part of the scheme that WARNER obtained two closing checks (the "Closing Checks") and traveled from Trinidad and Tobago to Florida to attend the closing on the Miami Condominium, which took place on or about December 29, 2005.  At the closing, WARNER provided the Closing Checks to a representative of Settlement Agent 1, a real estate settlement services company with offices in Fort Lauderdale, Florida, the identity of which is known to the United States Attorney.  The first of the Closing Checks was a $100,000 cashier's check drawn at a bank in Trinidad and Tobago with the remitter listed as "CONCACAF Centre of Excellence."  The second of the Closing

3

Checks was a $200,000 cashier's check drawn at the same bank with the remitter listed as "Nauti Krew Ltd." Neither of the Closing Checks was drawn on a checking or savings account of WARNER.

COUNT ONE
(Wire Fraud)

8.    The allegations contained in paragraphs 1 though 7 are realleged and incorporated as if set forth fully in this paragraph.

9.    In or about and between November 2005 and January 2006, both dates being approximate and inclusive, within the Southern District of Florida, the defendant DARYLL WARNER, together with others, did knowingly and intentionally devise a scheme and artifice to defraud Lender 1, and to obtain money and property from Lender 1, by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice did transmit and cause to be transmitted in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: an email dated December 26, 2005, sent from Trinidad and Tobago to a representative of Lender 1 located in the United States.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

INTRODUCTION TO COUNT TWO

At all times relevant to Count Two of this Information, the currency reporting requirements provided as follows:

4

## Structuring And Currency Reporting Requirements

10.  Transactions in currency were defined as transactions involving the physical transfer of money, as defined in Title 31, Code of Federal Regulations, Section 1010.100(bbb).

11.  Domestic financial institutions were required to file a Currency Transaction Report (FinCEN Form 104, hereinafter referred to as a "CTR") with the United States Department of the Treasury for each transaction in currency, such as a deposit, withdrawal, exchange of currency or other payment or transfer by, through or to such financial institution, in excess of $10,000, as required by Title 31, United States Code, Section 5313 and Title 31, Code of Federal Regulations, Section 1010.311.

12.  CTRs were filed with the Internal Revenue Service ("IRS") on forms which required, among other things, the identity of the individual who conducted the transaction (Part One of the CTR) and the individual or organization for whom the transaction was completed (Part Two of the CTR).

13.  CTRs were required to be filed to assist the United States in criminal, tax and regulatory investigations and proceedings, as stated in Title 31, United States Code, Section 5311.

14.  "Structuring" a financial transaction was defined in Title 31, Code of Federal Regulations, Section 1010.100(xx), as conducting, or attempting to conduct, one or more transactions

in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the currency reporting requirements, including, without limitation, by breaking down a sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, and conducting a currency transaction or a series of currency transactions at or below $10,000.

<u>COUNT TWO</u>
(Structuring)

15.    The allegations contained in paragraphs 10 through 14 are realleged and incorporated as if fully set forth in this paragraph.

16.    In or about and between July 2011 and December 2011, both dates being approximate and inclusive, within the Southern District of Florida, the defendant DARYLL WARNER, together with others, for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), and the regulations prescribed thereunder, did knowingly and intentionally structure, assist in structuring and attempt to structure one or more transactions with one or more domestic financial institutions, by (a) breaking down sums of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, and depositing the smaller sums of currency into accounts with one or more domestic financial institutions, and (b) conducting a series of currency transactions, including

6

transactions at or below $10,000, at one or more domestic financial institutions, all as part of a pattern of illegal activity involving more than $100,000 in a twelve-month period.

(Title 31, United States Code, Sections 5324(a)(3) and 5324(d)(2); Title 18, United States Code, Sections 2 and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNT TWO

17.  The United States hereby gives notice to the defendant that, upon conviction of the offense charged in Count Two, the government will seek forfeiture in accordance with Title 31, United States Code, Section 5317(c)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense and any property traceable to such property.

18.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value;

or

e.   has been commingled with other property which

cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

other property of the defendant up to the value of the

forfeitable property described in this forfeiture allegation.

(Title 31, United States Code, Section 5317(c)(1);

Title 21, United States Code, Section 853(p))


LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

8